IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | )   Criminal No. 3:23-19 |
| v. | )   Judge Stephanie L. Haines |
| | ) |
| JOHN "HERM" SUPLIZIO | ) |
| ROBERTA SHAFFER | ) |

**OPINION**

Pending before the Court are Motions for a Bill of Particulars filed by co-defendants John Suplizio (ECF No. 117) and Roberta Shaffer (ECF No. 118). For all substantive points, their motions are identical pleadings. On July 28, 2025, the Government filed its omnibus Response in opposition (ECF No. 123). On August 11, 2025, Shaffer and Suplizio (collectively "Defendants") filed their replies (ECF Nos. 125, 126, respectively). The Government was granted leave (ECF No. 130) and filed its omnibus Sur-Reply (ECF No. 131). The Court heard oral argument on September 11, 2025. Accordingly, the Motions are now ripe for disposition. As set forth below, the Court will DENY Defendants' Motions for a Bill of Particulars (ECF Nos. 117, 118).

I.   **Background and Procedural History**

On November 9, 2024, a 10-count Superseding Indictment (ECF No. 62) was filed charging Defendants at Count One with conspiracy to commit federal program theft in violation of 18 U.S.C. § 371; at Counts Two through Five with federal program theft in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2; at Count Six with conspiracy to engage in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1956(h); and at Counts Seven through Ten with engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1957(a) and 2. The Superseding Indictment

1

is a 28-page indictment comprised of 115 paragraphs that detail the following: the general allegations relevant to this case; the conspiracy; the manner and means of the conspiracy; the acts in furtherance of the conspiracy; and each separate count.

Defendant Suplizio was the City Manager for the City of Dubois and Defendant Shaffer was his Secretary. ECF No. 62, ¶¶ 3,4. All expenditures for the City of DuBois were required to be reviewed and approved by the City Council, which was composed of five elected members. ECF No. 62, ¶ 11. The Treasurer and Deputy Treasurer prepared a monthly report with the balances of all City bank accounts and the report was reviewed and approved by the City Council every month at public forum meetings. ECF No. 62, ¶¶ 11, 12. Packets of approved expenditures were sent to the Finance Director to print checks; the checks were sent to the Controller for final review; and the Treasurer signed the checks. ECF No. 62, ¶ 13. In this way, all expenditures of city money had oversight. All money paid to the city of DuBois was initially deposited into a "General Fund" and then transferred to the appropriate city account. ECF No. 62, ¶ 14. A monthly report was generated by the Deputy Treasurer of the balances of each account and the accounts were audited each year as required by Pennsylvania law. ECF No. 62, ¶ 14.

Community Days was an event that occurred annually in the City of DuBois over a weekend in the summer. Community Days were free to the public and typically included a parade, entertainment, and fireworks. ECF No. 62, ¶ 16. It was funded by local businesses, the City of DuBois, and donations from members in the community. ECF No. 62, ¶ 18. Suplizio was the finance chairman of the Community Days planning committee and Shaffer was the secretary for the committee. ECF No. 62, ¶ 19. There was a specific bank account used for managing the finances of Community Days named the DVFD Parade Committee Checking Account xxx7394

("Parade Account 7394") (ECF No. 62, ¶ 20). Suplizio and Shaffer were signatories on Parade Account 7394. ECF No. 62, ¶ 20.

The Superseding Indictment lists the following actions of Defendants (ECF No. 62, § D, p. 4):

1. Suplizio changed the payee of an "administrative fee" charged to a waste removal company ("Company 1") as part of a contract in the amount of $4,400 per month to be paid to DuBois Community Days instead of the City of DuBois.

2. Suplizio and Shaffer opened four "Community Days" bank accounts without the knowledge of City Council ("Community Days Accounts"). The bank accounts used the EIN numbers for the City of DuBois and DuBois Area United Way ("DAUW" – Suplizio was the Executive Director of DAUW).

3. The $4,400 per month that was to be paid for waste removal was being funneled into the newly opened Community Days Accounts for which Suplizio and Shaffer were the only signatories. The new accounts were xxxx1859 opened on May 15, 2008, and closed on August 12, 2008; xxxx4754 opened on August 12, 2008; xxxx1660 opened on February 10, 2009; and xxxx0920 opened on February 10, 2021 to replace 1660 which was closed on the same day. Suplizio and Shaffer used the DAUW address for the accounts mailing addresses; Defendants maintained offices at DAUW.

The Community Days Accounts were not included in the City of DuBois Treasurer Reports or tracked by the City's financial computer system. ECF No. 62, ¶ 36. Neither Parade Account 7394 nor Community Days Accounts were audited.

Two checks for two quarters of payments from Company 1 totaling $26,400 were used to open account 1859. ECF No. 62, ¶¶ 38-39. On or about August 12, 2008, Suplizio opened account 4754 with an initial deposit of $39,697. This amount was approximately the same amount of the money from the Closed account - $26, 400 – plus another quarterly payment from Company 1 for $13,200. ECF No. 62, ¶ 41. A pattern of depositing Company 1 payments into the Community Days Accounts continued from in and around December 2007 through March 2022. ECF No. 62,

3

¶¶ 42-44. The total amount of money rightly belonging to the City of DuBois but transferred in secret to Community Days Accounts was $838,800. ECF No. 62, ¶ 44.

The Superseding Indictment states that other funds were also illegally funneled to the Community Days Accounts. ECF No. 62, ¶ 45. An amount of $75,000 from Company 2 which was supposed to be for the option to buy water from the City of DuBois for fracking was deposited by Defendants into Community Days Account 1660. ECF No. 62, ¶¶ 46-47. Water sales payments from Company 3 were deposited into Community Days Accounts. ECF No. 62, § F. DuBois received millions of dollars from Company 3 and Defendants funneled hundreds of thousands of dollars from that revenue into Community Days Accounts. ECF No. 62, ¶ 51. The Superseding Indictment further details various dubious actions and transactions performed by Defendants that caused money to be labelled incorrectly and/or deposited into a Community Days Account. *See* ECF No. 62, ¶¶ 51-59.

"The Conspiracy" in Count One reads:

> From in and around May 2008, and continuing thereafter to in and around March 2022, in the Western District of Pennsylvania and elsewhere, defendants JOHN "HERM" SUPLIZIO and ROBERTA SHAFFER, agents of the City of DuBois, knowingly conspired, confederated, and agreed together and with each other, to embezzle, steal, obtain by fraud, and otherwise without authority knowingly convert to the use of any person other than the rightful owner, and intentionally misapply, property worth $5,000 or more, and that was owned by, and was under the care, custody, and control of the City of DuBois, a local government which during each relevant one-year period received federal benefits in excess of $10,000, by a variety of means, in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

ECF No. 62, ¶ 60.

"The Manner and Means of the Conspiracy" in Count One includes allegations that Suplizio and Shaffer exploited their roles as signatories on the Community Days Accounts and the Parade Account 7394 to make large cash withdrawals, write checks to themselves and others, obtain cashier's checks with themselves listed as payees, and make payments to Suplizio's

4

personal credit card covering vacation expenses, Suplizio's residential utilities, department store purchases, jewelry store purchases, political dinners, and other personal expenses, and that Community Days Accounts were not subject to proper oversight by the DuBois City Council or audited under Pennsylvania law. ECF No. 62, ¶ 61-62; *See also* ECF No. 62, ¶¶ 63-70.

The "Acts in Furtherance of the Conspiracy" in Count One include numerous paragraphs of the alleged overt acts (i.e., various monetary transactions) committed by the Defendants in furtherance of the conspiracy, and to effect the objects of the conspiracy, relative to Parade Account 7394, CD Account 1660, and Checking Account 4754. *See* ECF No. 62, ¶¶ 71-92.

In Counts Two through Ten of the Superseding Indictment, the factual allegations set forth in paragraphs 1-92 are incorporated by reference and then followed by the allegations of each offense detailed in each respective Count.

Defendants filed nearly identical motions and replies relative to their Bill of Particulars request (ECF Nos. 117, 118, 125, 126) wherein they seek an order from the Court directing the government to furnish information sufficient to allow them to adequately prepare for trial, avoid surprise during trial, and preserve the burden of proof. Defendants seek "clarity" regarding the allegedly fraudulent transactions, and specifically ask the government to identify the individual transactions it alleges were federal program theft under 18 U.S.C. § 666. They further state that the government's response that "all" of the transactions were fraudulent fails to provide the needed clarity.

**II.   Legal Analysis**

Rule 7 of the Federal Rules of Criminal Procedure require the following:

**(c) Nature and Contents.**

**(1) In General.** The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must

be signed by an attorney for the government.... A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated....

Fed. R. Crim. P. 7.

**(f) Bill of Particulars.** The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7.

Rule 7(f) of the Federal Rules of Criminal Procedure specifically empowers the trial court to direct the filing of a bill of particulars, and federal trial courts have always had very broad discretion in ruling on requests for such bills. *See Will v. United States*, 389 U.S. 90, 98–99 (1967). Defendants seek a bill of particulars identifying both the provisions of state or local law that support the charges,[1] and identifying which transactions the government alleges constitute the unlawful conversion of the funds. ECF No. 117, p. 1.[2]

Defendants also claim that the violation of Section 666 ("Theft or bribery concerning programs receiving Federal funds") includes no factual details about what funds were converted, nor how they were converted. They say there is no citation to the laws or regulations that Defendants violated in conducting the transactions. Defendants also state, "[T]he Superseding

---

[1] The Government references a Pennsylvania State law requiring audits but does not cite to it, nor expand on it. ECF No. 62, ¶ 14. Instead, the Government states that an IRS investigative report produced in discovery on October 8, 2024, expressly refers to Part 5 of 11 Pa. C.S.A. ("Third Class Cities"). ECF No. 123, p. 15. This law sets forth the requirements referenced in the Superseding Indictment. "[D]efendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Henderson* 2025 WL 1427504, at *8 (E.D. Tenn. 2025) (cited by Government at ECF No. 123, p. 16).

[2] At the hearing, Defense Counsel stated that the Government's pleadings made clear that it had abandoned the conversion theory and was only pursuing misapplication thus causing the issue of whether the expenditures were made for the benefit of the City of Dubois to be moot which eased the burden of discovery. The Government responded the Defense was mistaken in its interpretation of the pleadings and said it would pursue the conversion theory.

Indictment does not specify which of these three actions – the deposits, disbursements, or expenditures – constituted the alleged conversion. Nor does it specify, within each action, which of the thousands of transactions was unauthorized and thus part of the alleged scheme." ECF No. 117, p. 3. Because the alleged illegal transactions comingled with potentially legal, personal and business transactions, Defendants argue that it is difficult to sort through extensive discovery of all transactions, thus, making it impossible for Defendants to prepare for trial.[3]

The Government responds that Defendants are not entitled to anything more under the law. The Government further asserts that Defendants have been aware of the allegations for years, first in state prosecution and now here; that Pennsylvania law is referenced in the discovery materials; and, that Defendants have had more than ample time to review the materials. Additionally, the state case was started in April 2022 and counsel for the federal case was also retained for the state case. ECF No. 123, p. 8. Defense was given access to discovery materials in June 2023 and was provided with a thumb drive containing all relevant evidence to Pennsylvania charges on August 1, 2023. ECF No. 123, p. 8. Suplizio would have access to all records for his own credit card and the Government developed an Excel spreadsheet for purposes of reviewing the Visa transactions. ECF No. 123, p. 9. The Government contends that all records are well organized and easily navigable. Though Shaffer was not charged in state court and didn't receive discovery until December 2023, she, in her role as Suplizio's secretary, maintained a spreadsheet of all expenditures and notes about the payments. ECF No. 123, p. 10; ECF Nos. 122-1, 2, 3. The

---

3 The Court understands that personal Visa charges and payments were comingled with City of Dubois charges and payments. It is alleged that a total of credit card charges for the relevant time period was $866,000 and that Suplizio and Shaffer paid over $525,000 of that from accounts containing City money. ECF No. 123, p. 22.

Government proffers that Shaffer's spreadsheet contains the exact information that Defense is seeking.

As to Defendants request to know which transactions are being prosecuted, the Government responds with "all of them," stating that the federal program theft statute (18 U.S.C. §666(a)(1)(A) criminalizes the intentional misapplication of property, even if using the property ultimately benefitted the victim of the fraud (here, City of DuBois). The Government contends that Defendants intentionally misapplied every dollar of the over $1.5 million in deposits to the secret accounts – when it was deposited, then again when it was withdrawn from the accounts in large cash withdrawals or as payments to Suplizio's Chase Visa. *See, e.g., United States v. Shulick*, 18 F4th 91, 112 (3d Cir. 2021) (cited as an example of a case where funds were diverted from the benefit of the Philadelphia School District and then used for personal expenditures of defendants.) The Government states that to ask the United States to do any further accounting would be redundant, unnecessary, and unduly burdensome.

The Government further argues that Defendants' Motions are really an argument over the loss calculation that is to be addressed at sentencing, not over the elements of the crimes at this stage of the proceedings. This Court agrees. In *Shulik*, the Third Circuit held that it was the defendant's burden – not the government's – to show what money was spent for the benefit of the victim in a Section 666(a)(1)(A) prosecution because "the Government made out a prima facie case of the loss amount." *Shulik*, 18 F.4th at 114. ECF No. 123, p. 24.

> A bill of particulars is of a specific nature, and its status has legal consequences.
>
> "A bill of particulars is a formal written statement by the prosecutor providing details of the charges against the defendant." 1 Fed. Prac. & Proc. Crim. § 130 (4th ed. 2016). It effectively narrows the government's case at trial in the same way as the formal charging document: "there can be no variance between the notice given in a bill of particulars and the evidence at trial." [*United States*] v *Smith*, 776 F.2d [1104] 1111 [(3d Cir. 1985)]; *see also United States v. Murray*, 297 F.2d 812, 819

(2d Cir. 1962) ("[T]he government is strictly limited to proving what it has set forth in [a bill of particulars]."). In many instances, a bill of particulars provides information that ought to have been in the indictment in the first place and so protects the defendant by "preclud[ing] double jeopardy," shielding the defendant from a second trial for the same acts. *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991); *see also United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005).

*N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 429–30 (3d Cir. 2016). "There is no doubt that a bill of particulars should be so specific as to inform the defendant, substantially, on what the plaintiff's action is founded. This is the object of the bill, and if it fall[s] short of this, its tendency must be to mislead the defendant rather than to enlighten him." *Chesapeake & Ohio Canal Co. v. Knapp*, 34 U.S. 541, 564 (1835).

The purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.' *United States v. Addonizio*, 451 F.2d at 63–64. Only where an indictment fails to perform these functions, and thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial', *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989) (citing *Addonizio*, 451 F.2d at 62–63), will we find that a bill of particulars should have been issued. *United States v. Urban*, 404 F.3d 754, 771–72 (3d Cir. 2005).

The Court finds the Superseding Indictment in this case to be a plain, concise, and definite written statement of the essential facts constituting the offenses charged. It succinctly identifies the statutes Defendants are accused of violating, the elements of those statutes, the victim of the fraudulent scheme, when the alleged fraud occurred, the manner by which the fraud occurred, from where and how funds were funneled, and the alleged illegal use of funds. It provides details of the alleged scheme and each defendant's role in the scheme, as well as accounts and identifying

9

account numbers that were allegedly used to funnel City of Dubois funds out of the purview of the city officials who were required and appointed to oversee the money transactions. Accordingly, the Superseding Indictment more than adequately informs Defendants of the offenses charged an and enables them to prepare a defense, avoid surprise, and avoid double jeopardy.

Defendants in their Responses raised a new legal issue of an impermissible overlap of the money laundering and federal program theft charges asserting that the same transactions cannot be both a money laundering offense and the specified unlawful activity that generated the funds being laundered. ECF Nos. 126, 128, pgs. 4-6. Defendants use this argument as another basis for requiring a Bill of Particulars to specifically identify the transactions and when the transactions became tainted so Defendants can properly defend against them.

The Government's response in its Sur-Reply (ECF No. 131) states that the additional issue raised - did the criminally derived property exist before the laundering - is not a question of the adequacy of the Superseding Indictment, which is what is meant to be addressed by a Bill of Particulars. ECF No. 131, p. 1. Likewise, the Government asserts that this newly raised issue "reads like a motion to dismiss and has nothing to do with the motion for the bill of particulars," and adds that the deadline to file motions passed months ago. ECF No. 131, pgs.1-2.

The Government also states that overlap is permissible. "It is well established law that a money laundering transaction can also be part of a continuing specified unlawful activity; the two may overlap so long as there has been a completed phase of the offense that produced criminally derived property." ECF No. 131, p. 2. *See United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994) ("The fact that there may be some overlap in the acts alleged to constitute the conduct of an illegal gambling business and money laundering does not give us pause."); *United States v. Omoruyi*, 260 F.3d 291, 295 (3d Cir. 2001) ("[T]he conduct constituting the underlying offense

conduct may overlap with the conduct constituting money laundering.") The Government states, "The deposits into the bank accounts described in the Superseding Indictment "completed" the federal programs theft, and then the defendant laundered that money by conducting transactions over $10,000. The fact that those transactions are also part of the federal program theft conspiracy does not create impermissible overlap." ECF No. 131, p. 11, fn 7.

The Court again finds a Bill of Particulars unnecessary to identify when each transaction became tainted as the Government has stated that the money transactions became tainted at the time the money was diverted from the oversight of City Council and the Superseding Indictment provides ample information so that Defendants can properly defend against the charges contained therein.

At the September 11, 2025 hearing on this matter, in arguing for a Bill of Particulars, Defendants drew the Court's attention to the burden this case would have on the time of the Court. Defendants asserted that the vast discovery and potential number of witnesses would cause a jury to sit for many weeks listening to testimony on each transaction. Testimony would include transactions transferring money to Community Days accounts as well as transactions transferring monies from the Community Days accounts to determine whether or not each transaction was illegal or benefited the city of Dubois. While the Court understands that judicial economy is a valid consideration, the Court will again not require a Bill of Particulars based upon this argument.

### III. Conclusion

The Superseding Indictment in this case is a 28-page, 115 paragraph pleading that provides a plain, concise, and definite written statement of the essential facts constituting the offenses charged, thereby enabling the Defendants to prepare for trial, avoid surprise during trial, and

preserve the burden of proof. Accordingly, Defendants Motions for a Bill of Particulars (ECF Nos. 117, 118), are DENIED.

DATE: October 23, 2025

_____
Stephanie L. Haines
United States District Judge